IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Civil Action No. 7:16-cr-00062 |
| ) | |
| WILLIAM MURPHY BRADBURY, ) | By: Elizabeth K. Dillon |
| ) | United States District Judge |
| Defendant. ) | |

**MEMORANDUM OPINION**

Pending before the court is defendant William Murphy Bradbury's motion to suppress (Dkt. No. 31), which has been briefed and was argued at a hearing on April 11, 2017. Bradbury argues that the court should suppress all items seized in the search of Room 203, Extended Stay America, pursuant to a search warrant issued and executed on October 4, 2016. He alleges that "the affidavit in support of the warrant (attached as Exhibit 1) contained material misrepresentations and omitted material information with reckless disregard of the likelihood of the affidavit being so misleading as to vitiate probable cause." (Dkt. No. 31.) He does not contend that the affidavit was not facially sufficient. For the reasons set forth below, the court will deny Bradbury's motion.

I. BACKGROUND

Bradbury is charged in a single-count indictment with knowingly possessing a firearm on October 4, 2016, after having been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1) and 924(e).

According to the police reports and search warrant documents attached to Bradbury's briefs, officers had information from a reliable confidential source that a man calling himself "Murphy" and with a "Murphy" tattoo had narcotics and a firearm, was driving a white Jeep

Cherokee with a specific registration number, and was in Room 203 at the Extended Stay America (Room 203). Officers determined that Room 203 was registered to William Murphy Bradbury and that there was an arrest warrant for him for a revocation violation on underlying drug charges. Motel staff identified Bradbury's photo. Additionally, the jeep with the registration number provided by the informant was seen at the motel. At some point, the jeep was no longer in the parking lot. While it later returned, no officers saw who was operating the jeep. A woman, believed to be Bradbury's girlfriend, had come and gone from the motel at some point.

Officers attempted to get Bradbury to open the door, but he only opened the door with the internal latch or slide lock still on and demanded to see the warrants. He also looked out the window and could confirm police presence.

Officers gained access to an adjoining room and listened to Bradbury through the bathroom wall. The reports indicate that one officer heard Bradbury talking on the phone with a female discussing their love for each other, and Bradbury said, "I'm going to make them kill me" and "I'm not doing 20 years." Then another person was talking on the phone with Bradbury and asked him what was happening. Bradbury responded, "Swat is at the door, I'm telling you they are dead through their shields and everything, I'm done with this shit, and I'm going out blazing." The original female then returned to the phone, and they expressed their love again. After hearing Bradbury's statements, officers established a better position and evacuated portions of the motel. Eventually, Bradbury opened the door, followed commands, and was taken into custody.

During the above events, Detective Loughery swore out an affidavit for a search warrant for Room 203 for the person of Bradbury and any firearms, ammunition, or controlled

substances. With regard to the material facts constituting probable cause, he stated that Detective Maxey received information from a confidential source that Bradbury was residing in Room 203, was known to be driving a jeep with a specific registration number, and was wanted on an outstanding probation violation. He further stated that surveillance on the room and jeep was initiated, that officers approached and knocked, and that the door was opened by the occupant who was identified by Deputy Marshall [sic] Helton as Bradbury. He then noted that "Bradbury immediately closed and barricaded the door and made statements about coming out shooting." A search warrant was issued at 4:55 p.m. on October 4. After Bradbury was arrested, the search warrant was executed.

The female with whom Bradbury was speaking by phone was incarcerated during these events, so her phone calls were recorded. Bradbury has provided the court with the recorded calls. The recordings confirm that Bradbury was speaking with a woman with whom he had a relationship, and they were repeatedly expressing their love for each other. They confirm that Bradbury was using the speaker function of his phone at times, that he had more than one phone, and that he was speaking with persons other than the incarcerated female at times. The incarcerated female had a very difficult time hearing and understanding Bradbury because of the speaker function of the phone, and the recordings reflect the same and are indecipherable at times.

Bradbury moves to suppress all items seized during the search of Room 203. The items listed on the search inventory are a pistol, VISA debit cards, and tan powder substance. He bases his motion on four alleged misrepresentations and/or omissions in the affidavit. First, he notes that the affidavit failed to mention that the jeep that the informant said Bradbury was driving was not registered to, or otherwise connected to, Bradbury. Second, the affidavit failed to mention

3

that the jeep, while supposedly under surveillance, left and returned to the motel parking lot, unobserved, without anyone leaving Room 203. Third, the affidavit stated that Bradbury opened the door to Room 203 and immediately closed it, but failed to state that Bradbury never opened it to allow observation of himself or the inside of the room. Finally, the affidavit implied that Bradbury directly told Deputy Marshal Helton that he was coming out shooting or with guns blazing. Instead, Detective Maxey heard comments to that effect while listening through the bathroom wall of the adjoining motel room. Moreover, Bradbury never said he was coming out "guns blazing."

## II. DISCUSSION

### A. Preliminary Showing for a *Franks* Hearing Required

A search warrant affidavit has a "strong 'presumption of validity.'" *United States v. Colkley*, 899 F.2d 297, 300 (4th Cir. 1990) (quoting *Franks v. Delaware*, 438 U.S. 154, 171 (1978)). If a defendant can make "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit" and that the false information was "essential to the probable cause determination," then he may "obtain an evidentiary hearing on the affidavit's integrity" (a *Franks* hearing). *Colkley*, 899 F.2d at 300. The items found during the search will be excluded if the defendant establishes material perjury or recklessness by a preponderance of the evidence at the *Franks* hearing. *Id*. The defendant's preliminary showing must include a "detailed offer of proof" and not be merely conclusory. *Id*.

With regard to omissions from affidavits, *Franks* "protects against omissions that are *designed to mislead*, or that are made in *reckless disregard of whether they would mislead*, the magistrate." *Id*. at 301 (citing *United States v. Reivich*, 793 F.2d 957, 961 (8th Cir. 1986))

4

(emphasis in original). Neither an intentional decision not to include every piece of information in the affidavit, nor negligence in omitting a relevant matter, is sufficient to meet this standard. *Id*. at 300–01.[1] An omission, if it meets the above standard, must also be material. That is, it "must do more than potentially affect the probable cause determination: It must be 'necessary to the finding of probable cause.'" *Id*. (quoting *Franks*, 438 U.S. at 156). In other words, the omission, if included in the affidavit, would have to "defeat probable cause." *Colkley*, 899 F.2d at 301.

**B. None of the Alleged Omissions Defeat Probable Cause**

The court concludes that Bradbury has failed to make the preliminary showing required to obtain a *Franks* hearing. The omissions alleged by Bradbury were not designed to mislead or made in reckless disregard of whether they would mislead, and, even if they were, they are not material because, if included, they would not have defeated probable cause. Bradbury makes much of the fact that the affidavit did not include information about the officers listening to Bradbury's statements through the bathroom wall of the adjoining motel room. The affidavit said, "Bradbury immediately closed and barricaded the door and made statements about coming out shooting." Bradbury asserts that he never said he was coming out "guns blazing" and that the affidavit implies that the officer at the door heard the statement or that it was directed at the officer, neither of which is true.

Counsel has provided recorded telephone calls with Bradbury's girlfriend, who was incarcerated during these events. The recordings provided by counsel support the officer's account of the calls and show no misleading omissions or inaccurate information. The recordings make clear that Bradbury, at times, was talking to other people on the same phone

---

[1] The Fourth Circuit has expressed doubts as to whether bad motive can be inferred from an omission because to do so "collapses into a single inquiry the two elements—'intentionality' and 'materiality'—which *Franks* states are independently necessary." *Colkley*, 899 F.2d at 301.

5

and, it appears, on at least one other phone; thus, not all of his statements are on the recordings. So, it is possible that he did use the term "guns blazing," although that statement is not heard in the recordings. Moreover, the recordings confirm statements similar to the police reports: he expressed his love for his girlfriend, discussed riot shields, made a statement about "going out [indecipherable] hard," said "something f---ing kill me," and mentions 20 years. These statements are consistent with the summary contained in the affidavit—he "made statements about coming out shooting." The evacuation of portions of the motel further confirms the officers' belief in the threatening statements. There is no evidence of omissions designed to mislead or reckless disregard. Furthermore, whether a statement was made by Bradbury to an officer through a closed door or to a person to whom Bradbury was talking on the phone and heard by an officer through a wall is not relevant to the analysis of probable cause. The salient points are that he made a statement and an officer heard it. Even if the omitted information had been included, there still would have been probable cause.

Bradbury also asserts that the affidavit omitted the fact that Bradbury did not open the door enough for anyone to observe him or the inside of the room. The affidavit stated that "the door was opened by the occupant who was identified by Deputy Marshall [sic] Helton as Bradbury." While the statement is inartfully worded, it is not false. The police reports indicate that Bradbury opened the door with the internal latch or slide lock still on and also looked out the window. It does not indicate whether any officer could see him to identify him when he opened the door or looked out the window. The recorded calls show that his girlfriend was calling him Murphy while on speaker phone. Additionally, the police reports indicate that at some point in time Deputy Marshal Helton confirmed with motel staff that Room 203 was registered to Bradbury, his photo was identified by staff, and staff advised that he paid for the week and was

believed to be staying in the room. Any omission as to the manner of identification, or inference that the open door led to the identification, even if made in reckless disregard as to whether it would mislead the magistrate, is not material. It is not necessary to the finding of probable cause that the identification was or was not made when the door was opened. In other words, any omission does not defeat probable cause.

Finally, Bradbury complains that the affidavit failed to mention that the jeep was not registered to Bradbury or "otherwise connected to him" and that the jeep left and returned unobserved without anyone leaving Room 203. That the jeep was not registered to Bradbury is of no importance. Many people drive vehicles that are not registered to them. Furthermore, Bradbury is wrong when he states that the vehicle was not "otherwise connected to him." Indeed, the informant stated that Bradbury was known to be driving the jeep. That jeep was found at the motel. The moving of the jeep is also not material. There was no information provided by the informant that the jeep was in the exclusive control of Bradbury or was being driven exclusively by Bradbury, so the fact that the jeep was moved by someone not in Room 203 does not defeat probable cause.

Because defendant has not made a showing that a false statement was made in the affidavit, much less that a false statement was made knowingly, intentionally, or with reckless disregard for the truth, and because no omission affected the probable cause determination, no *Franks* hearing will be ordered.

III.  CONCLUSION

For the reasons stated above, the court will deny Bradbury's motion to suppress.  An appropriate order will be entered.

Entered: May 30, 2017.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge